```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN JANAKIEVSKI,

                        Petitioner,
     -vs-                                    DECISION AND ORDER
                                             No. 6:14-cv-06168-MAT
STATE OF NEW YORK,

                        Respondent.
_____
```

## I.  Introduction

On April 8, 2014, Steven Janakievski ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his involuntary retention in a non-secure wing of Rochester Psychiatric Center ("RPC") pursuant to a temporary retention order issued by the Monroe County Court of New York State. Presently pending before the Court is Petitioner's Combined Motion to Grant an Expedited Hearing and Motion for an Evidentiary Hearing (Dkt #21).

## II.  Factual Background and Procedural History

On December 10, 2007, while Petitioner was working as a temporary employee at Bausch & Lomb, he stabbed one of his co-workers in the face, head, and neck with a sharp object, causing the victim life-threatening injuries. At the time, Petitioner was under a psychotic delusion that the co-worker was a Soviet spy engaged in corporate espionage; Petitioner initiated the attack because he heard voices telling him to apprehend the co-worker.

Petitioner was arrested and charged with first-degree assault. Subsequently, he was found not competent to participate in his defense and was admitted to the forensic unit at the RPC.

The parties agreed that, on the date of the assault, Petitioner had been in a state of psychosis, though it was unclear whether the psychosis had been induced by his heavy use of controlled substances including hallucinogens and cocaine, or was the product of a biological condition. Petitioner was permitted to plead not responsible by reason of a mental disease or defect to one count of first-degree assault in satisfaction of the indictment.

Following entry of his guilty plea in Monroe County Court (Keenan, J.) on December 23, 2008, an examination order was issued pursuant to New York Criminal Procedure Law ("C.P.L.") § 330.20(2). On April 2, 2009, the County Court found that Petitioner suffered from a dangerous mental disorder and ordered him committed to a secure OMH facility for 6 months. On October 26, 2009, the County Court granted a first retention order authorizing Petitioner's continued retention until October 2, 2010, and permitting him escorted furloughs.

In August 2010, several months prior to the expiration of the then-current retention order, OMH applied for a second retention order to extend Petitioner's in-patient care for two more years. On August 6, 2010, and August 18, 2010, the County Court held a

hearing on OMH's application. On October 19, 2010, the County Court found that OMH had proven, by a preponderance of the evidence, that Petitioner had a dangerous mental disorder. The County Court granted a two-year extension of the retention order, setting it to expire on October 31, 2012. However, by letter order dated December 31, 2010, the County Court advanced the retention order's expiration date to July 2, 2011.  In September 2011, OMH filed an application for a continued retention order. Although Petitioner's earlier retention order had expired in July 2011, he did not contest his continued retention and agreed to an order of temporary retention while OMH's application remained pending. The County Court (Dinolfo, J.) issued a temporary retention order in September 2011.

In July 2012, the County Court conducted a retention hearing at which Guillermo Portillo, M.D., Petitioner's treating psychiatrist at RPC, testified on behalf of OMH. Dr. Portillo opined that Petitioner continued to suffer from a dangerous mental disorder warranting his retention in a secure OMH facility pursuant to C.P.L. § 330.20(1)(c). At the time of the retention hearing, Petitioner had not communicated with any RPC psychiatrists since December 2010. While Dr. Portillo had given a general diagnosis of Psychotic Disorder, Not Otherwise Specified, in September 2011, he clarified at the July 2012 hearing that Petitioner was suffering from Schizoaffective Disorder, Bipolar Type, inasmuch as Petitioner

was experiencing paranoid delusions that did not appear to be substance-induced.

Petitioner called psychiatrist Rory Houghtalen, M.D. as a medical expert. Dr. Houghtalen testified that he had diagnosed Petitioner with Substance Induced Psychotic Disorder, Hallucinogen-Persisting Perception Disorder, and Polysubstance Dependence, all of which were in remission. Although Dr. Houghtalen disagreed that Petitioner was delusional, he noted that Petitioner's "current mental status [was] consistent with the CPL 330.30 definition of mental illness. . . ." Dr. Houghtalen did not believe Petitioner was dangerous, provided that he did not resume controlled substance use.

The County Court partially granted OMH's application for a subsequent retention order, finding that Petitioner continued to be "mentally ill" as defined in C.P.L. § 330.20(1)(d). The County Court rejected Dr. Portillo's opinion that Petitioner was suffering from a dangerous mental disorder requiring commitment in a secure OMH facility. However, because Petitioner continued to require care and treatment for his Polysubstance Dependence to prevent a relapse and because he was unable to understand the need for the treatment he required, the County Court determined that Petitioner should be housed in a non-secure OMH facility.

On August 6, 2012, the County Court executed a subsequent order of retention authorizing Petitioner's continued commitment

until July 2, 2013. Although Petitioner, through counsel, filed a notice of appeal, he did not perfect the appeal until April 2013, only a few months before the expiration of the August 6, 2012 order.

Meanwhile, on July 3, 2013, OMH applied for a subsequent order of retention. On September 6, 2013, the County Court issued an order of temporary retention permitting RPC to keep Petitioner in its care until the County Court decided the July 2013 application.[1]

This habeas petition followed in which Petitioner challenges the following judgments by the County Court: the initial commitment order dated April 2, 2009; the subsequent retention order dated October 19, 2010; the letter order dated December 31, 2010, modifying the expiration date of the October 19, 2010 order; and the August 6, 2012 subsequent retention order. Petitioner asserts nineteen (19) grounds for relief. Respondent filed an answer and memorandum of law in opposition to the petition. Petitioner filed a reply brief.

On April 27, 2015, Petitioner filed a combined Motion to Grant an Expedited Hearing and Motion for an Evidentiary Hearing (Dkt #21). In particular, Petitioner seeks an evidentiary hearing

---

[1] As of January 15, 2015, this application remained pending before the County Court. Respondent notes that on January 30, 2014, the County Court granted OMH's application to allow Petitioner to have escorted community furloughs. Respondent indicates that Petitioner was approved in March 2015 to go on unescorted furloughs from RPC into the community, but his privileges were suspended while his absence for a three-hour period was under investigation.

on the arguments he raised in his habeas petition as well as the arguments he raised in opposition to Respondent's arguments. See Dkt ##19 & 20. Petitioner also seeks an expedited hearing on his petition, pursuant to Local Rule 7(d)(1) of the Western District of New York's Local Rules of Civil Procedure.

On April 28, 2015, Respondent filed a Motion for an Extension of Time to File a Response (Dkt #22) to Petitioner's Motions. The Court granted Respondent's request for an extension of time and requested that Respondent address the status of the application by OMH for a subsequent retention order pursuant to C.P.L. § 330.20 currently pending in Monroe County Court. In its responsive papers, Respondent argues that the requests for an evidentiary hearing and expedited hearing should be denied because the claims raised in Petitioner's habeas petition are either unreviewable under 28 U.S.C. § 2254, moot, or both. See, e.g., Chambers v. Conway, No. 09 Civ. 2175(JGK), 2011 WL 2226956, at *13 (S.D.N.Y. June 8, 2011) (§ 2254 proceeding; denying request for evidentiary hearing where all of petitioner's claims were "dismissed as procedurally barred, moot, or without merit, and the petitioner has made no showing that an evidentiary hearing could affect the disposition of any of the claims") (citations omitted); see generally Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (§ 2255 proceeding; a district court has discretion to rely on documentary evidence in deciding habeas petitions, and need not conduct a "full-blown

testimonial hearing" when in-court testimony "would not offer any reasonable chance of altering [the court's] view of the facts"). In the alternative, Respondent urges the Court to abstain from ruling on Petitioner's petition because state-court proceedings are still pending.

For the reasons discussed below, the Court finds that abstention is required with regard to the federal constitutional claims asserted in the petition. The Court denies without prejudice Petitioner's motions for an expedited hearing and an evidentiary hearing, and stays the habeas proceeding pending completion of the state-court retention proceedings.

**III. Abstention: General Principles**

In Younger v. Harris, 401 U.S. 37, 43-44 (1971), the Supreme Court held that "a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." Samuels v. Mackell, 401 U.S. 66, 69 (1971). Although the Younger abstention doctrine was created in the context of state criminal proceedings, "it now applies with equal force to state administrative proceedings." Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (citing Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627 (1986) (abstention proper where federal plaintiff challenged administrative action brought by state's civil rights agency)).

Under Younger, a federal court must decline to exercise its jurisdiction and abstain from deciding a constitutional claim where "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Diamond "D" Constr. Corp., 282 F.3d at 198 (citing Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001)). Notwithstanding the strong policy in favor of abstention, a federal court may intervene in a state proceeding upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 54.

**IV. Analysis**

**A.   Ongoing State-Court Proceeding**

First, it is apparent based on Respondent's submissions that the retention proceedings brought pursuant to Article 9 of the New York State Mental Hygiene Law are still pending. On June 3, 2015, the New York State Attorney General's Office, acting on behalf of OMH, filed an application for a subsequent retention order in Monroe County Court because the current temporary retention order authorizing Petitioner's retention is set to expire on July 2, 2015. Monroe County Court Judge Vincent Dinolfo met with counsel for OMH and Petitioner several times during the week of June 8, 2015. As a result of these discussions, the parties entered

into a Consent Order pursuant to which Petitioner consented to be retained in the custody of OMH until October 8, 2015, with the understanding that he will continue to participate in unescorted community furloughs. Judge Dinolfo will hold Petitioner's state habeas petition[2] and OMH's subsequent retention order application in abeyance during this time, and will assess Petitioner's therapeutic progress. By the terms of the Consent Order, if Petitioner's treatment progress ceases, all parties have reserved their rights to bring any actions and raise any defenses that existed on June 10, 2015. The first progress assessment will be made by Judge Dinolfo on August 6, 2015. See Dkt #26, ¶¶ 2-6 & Exhibits.

There can be no dispute that the retention proceedings brought pursuant to Article 9 of the New York State Mental Hygiene Law constitute ongoing judicial proceedings for Younger abstention purposes. Furthermore, the parties and the presiding judge are actively involved in discussions to resolve all of the relevant issues, and such a resolution may obviate the need for the federal habeas proceeding.[3]

---

[2] On April 24, 2015, Petitioner filed a petition for a writ of habeas corpus under New York State law in Monroe County Court.

[3] Even if a final decision had been rendered in the retention proceeding, any appeal from such a decision would still constitute an "ongoing proceeding" under Younger. See Glatzer v. Barone, 394 F. App'x 763, 765 (2d Cir. 2010) ("[A]t the time the district court entered judgment, his state appellate proceedings were still

**B.     Important State Interest**

A state interest will be deemed "important" under Younger where "the state action concerns the central sovereign functions of state government." Grieve, 269 F.3d at 152 (citation omitted). "Here, New York State has an important interest in determining the application of its own mental health laws." United States ex rel. Best v. Barbarotta, No. 12-CV-6218(NGG), 2013 WL 66031, at *2 (E.D.N.Y. Jan. 4, 2013) (citing Pratt v. Hogan, 631 F. Supp.2d 192, 196 (N.D.N.Y. 2009) (finding important state interest where state action involved determination of constitutionality of state's sex offender treatment program which was administered by OMH and which required mental health evaluations)). New York also has a strong interest in protecting its citizens, an interest that could be implicated if this Court were to grant habeas relief to Petitioner who allegedly has been refusing to participate fully in his treatment program and communicate with the psychiatrists at RPC. See United States ex rel. Best, 2013 WL 66031, at *2 ("[A] temporary restraining order would release Plaintiff, who allegedly has mental health problems for which he refuses to be medicated, back into society. This directly implicates New York's strong

---

pending. More significantly, even assuming, arguendo, that the Appellate Division dismissed his appeals prior to the district court entering its decision, his state court proceedings were still pending, as he remained free to appeal to the New York Court of Appeals.") (unpublished opn.) (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)).

interest in protecting its citizens.") (citing <u>Manculich v. Bucci</u>, No. 05-CV-1441, 2006 WL 1085174, at *2 (N.D.N.Y. Apr. 25, 2006) ("The ability of a municipality to . . . protect the public health and safety is an important state interest.")). <u>Younger</u>'s state-interest factor weighs in favor of absention.

### C. Adequacy of State Proceedings

With regard to the adequacy of the judicial review available to Petitioner in state court, the subsequent retention proceedings are pending in the Monroe County Court. Though a county court in New York is a court of limited as opposed to general jurisdiction, it can hear Petitioner's constitutional claims and can afford Petitioner the relief he now seeks—release from OMH's custody. <u>See</u> N.Y. MENTAL HYGIENE L. § 9.31(c) (authorizing the court to "order the release of the patient"). If Petitioner receives an unfavorable decision from the Monroe County Court, he has two avenues of redress, a permissive direct appeal to the Appellate Division of New York State Supreme Court under C.P.L. § 330.20(21), or a rehearing and review proceeding under C.P.L. § 330.20(16). <u>Jamie R. v. Consilvio</u>, 6 N.Y.3d 138, 148-49 (2006). The Court accordingly finds that Petitioner has an adequate "opportunity for judicial review of his constitutional claims during or after the proceeding." <u>University Club v. City of N.Y.</u>, 842 F.2d 37, 40 (2d Cir. 1988).

**D.     No Exceptions to Abstention Apply**

The Supreme Court has instructed that "unless state law clearly bars the interposition of the constitutional [or federal] claims," and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 435 (1982) (internal quotation marks and citation omitted). The Second Circuit has interpreted Younger as requiring that the party opposing abstention bears the burden of establishing that an exception applies. Diamond "D" Const. Corp., 282 F.3d at 198 (citing Kirschner v. Klemons, 225 F.3d 227, 235–36 (2d Cir. 2000) ("Since Younger abstention is required unless 'it plainly appears' that the federal claims cannot be determined in the state proceeding, [the plaintiff's] conclusory assertion regarding attorneys' fees [not being recoverable in the state action] cannot suffice.") (citing Middlesex County Ethics Comm., 457 U.S. at 435; some internal quotation marks and additional quotation omitted).

Although Petitioner has consistently argued throughout the course of the state and federal proceedings that the State entities and the individuals involved have acted unlawfully and in bad faith, the Court finds these accusations to be unsupported by the record. The Court further finds that Petitioner has failed to demonstrate that the pending and available state court proceedings

are "incapable of fairly and fully adjudicating the federal issues before it." Kugler v. Helfant, 421 U.S. 117, 124 (1975). In sum, the Court sees no extraordinary circumstances mitigating against the application of Younger abstention here.

## IV. Conclusion

For the foregoing reasons, the Court denies Petitioner's motions to expedite and for an evidentiary hearing without prejudice. As explained above, Younger abstention is appropriate in this matter. The Court finds it appropriate to stay the federal habeas petition pending completion of the currently pending retention proceeding in Monroe County Court and any subsequent appellate review by Petitioner of the Monroe County Court's decision. Accordingly, it is hereby

**ORDERED** that this matter is stayed pending completion of the retention proceeding in Monroe County Court and any subsequent appellate review by Petitioner of the Monroe County Court's decision in regards to the retention proceeding. It is further

**ORDERED** that if Petitioner desires to continue with this case after completion of the retention proceeding in Monroe County Court, he must request that the stay be lifted within thirty (30) days of the issuance of the relevant order by Monroe County Court. It is further

**ORDERED** that Petitioner's Motion for in forma pauperis status (Dkt #17) is denied without prejudice.

-13-

**ORDERED** that the Clerk of Court is directed to administratively close this case. This action is for statistical purposes only and does not affect Petitioner's right to request that the stay be lifted as directed above.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 6, 2015
         Rochester, New York